O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| LEWIS WEBB, JR., <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>ESTATE OF TIMOTHY CLEARY; TWIN PALMS AVIATION, INC.; SUSAN ERICH; and ERICH AVIATION INSURANCE SERVICES, LLC, <br><br>　　　　Defendants. | Case No. EDCV-08-565-SGL (AJWx) <br><br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND |

　　This case presents a question concerning what impact the Ninth Circuit's recent decision in <u>Montalvo v. Spirit Airlines</u>, 508 F.3d 464 (9th Cir. 2007), has on the preemptive scope of the Federal Aviation Act ("FAA").

　　Defendants removed an action filed by plaintiff in Riverside County Superior Court involving a fatal airplane crash on the basis that the Ninth Circuit's decision in <u>Montalvo</u> had held that the FAA's preemptive effect was in the nature of complete preemption of the entire field of aviation safety and that the claims at issue involve "aviation safety." If defendants have correctly stated <u>Montalvo</u>'s holding, removal was proper so long as one of the claims in the complaint filed in state court concerns "aviation safety."

　　Finding that the decision in <u>Montalvo</u> did hold FAA's preemptive scope was complete and that, at least, one or more of the claims pressed in the complaint fall within

the ambit of the FAA's preemptive reach, the Court **DENIES** plaintiff's motion to remand the matter to the Riverside County Superior Court.

## I. BACKGROUND

Since January, 2003, Lewis Webb has had a running account with Twin Palms Aviation, Inc., "to pay for flight instruction services and aircraft rental fees." Timothy Cleary, a FAA-certified flight instructor and commercial pilot, was employed by Twin Palms and was assigned by the company to serve as Webb's flight instructor, a service which he performed for Webb from January, 2003, until the airplane accident in October, 2007, that killed him and prompted this lawsuit. Over the course of those four years, Webb paid Twin Palms over $16,000 for flight instruction from Cleary.

After beginning lessons, Webb purchased a single-engine Cessna airplane, which he then used for flight instructions. With the purchase of the Cessna airplane, Webb in March, 2004, procured aviation insurance from Erich Aviation Insurance Services ("EAIS") with the understanding that "all insurance so procured was to cover [Webb's] aircraft." In February, 2007, Webb contacted Susan Erich, the owner of EAIS, to see whether the insurance he had purchased would cover his son flying the airplane. Erich replied that the insurance covered all licensed pilots that flew the airplane. Webb then asked Ms. Erich whether Cleary could be added to the policy, to which she replied that it was unnecessary as, again, the policy already covered any licensed pilot flying the plane.

On October 28, 2007, Webb went to the hanger at the Bermuda Dunes Airport, where he met his grandson, Michael Webb, and Cleary. Webb discussed with Cleary the status of his (Webb's) account with Twin Palms. "Cleary [implied] to [Webb] that Twin Palms . . . owed him [Cleary] money for services rendered [worth approximately $380 to $420], and that [Cleary] had not been paid because of the recent death of [the company's] owner." (Compl. ¶ 14). From this Webb "was led to believe" that Twin Palms "was temporarily closed." (Compl. ¶ 14). Webb then paid Cleary $500, and Cleary proceeded to conduct "pre-flight inspections" with Michael Webb "while [Lewis Webb's Cessna] remained stationary." After performing these pre-flight tasks, the two proceeded to

undertake several in-flight maneuvers known as "touch and go" with Lewis Webb observing from the ground. What happened while the Cessna was in the air is recounted in the complaint as follows:

> When the Cessna "approached the runway to land, Cleary told Michael Webb to maintain 'ground effect' and not to land. Prior to reaching the end of the runway, Michael Webb noticed that the throttle was not fully in and Cleary stated, 'I've got the aircraft.' Cleary then took complete control of the [airplane] . . . . Cleary proceeded to climb out, increasing altitude, [but] without the throttle fully in [it caused] the aircraft to stall," resulting in the airplane to spiral downwards 400' and to crash into the ground "at the end of the runway."

(Compl. ¶¶ 18-19).

As a result of the crash, Cleary died, Michael Webb was severely injured, and the plane itself was destroyed beyond repair.

A later investigation into the plane crash revealed that there were "no mechanical errors or defects" with the plane and that Cleary was intoxicated at the time of the crash with a blood alcohol level of .31%. It is alleged that Twin Palms "was aware of Cleary's history of smelling of alcohol and appearing intoxicated on the airport premises and while performing flight instruction duties," but that the company failed to warn Webb or his family of that fact. (Compl. ¶ 21).

Finally, after the plane crash, Webb submitted a claim to EAIS for the damage to the plane, but the claim was rejected by the insurance company "because it was being used for flight instruction."

On March 12, 2008, Lewis Webb filed the present suit in Riverside County Superior Court against the Cleary estate, Twin Palms, EAIS, and Ms. Erich, alleging a host of state law claims. Specifically, as against Cleary's estate and Twin Palms, Webb asserts that the two were negligent and negligent per se on account of Cleary's intoxication (and Twin Palms being aware of that problem beforehand) and seeks monetary damages for the damage caused to the airplane. Webb also asserts claims against Cleary's estate and Twin Palms claims for intentional and negligent infliction of emotional distress for exhibiting reckless disregard in allowing Cleary to fly planes despite his problems with alcohol which

resulted in Webb suffering emotional injuries from watching the plane with his grandson aboard crash. Finally, with respect to EAIS and Ms. Erich, Webb has asserted claims for negligence and negligent misrepresentation due to the mistaken assurances given to Webb by Erich that he did not have insurance to cover the loss of his airplane in spite of their prior representations that so long as the pilot was certified the insurance would cover any damage to the plane.

On April 25, 2008, defendant Twin Palms removed the case to this Court, asserting federal preemption of the state law claims on account of the FAA as a basis for this Court's jurisdiction over the matter. Presently before the Court is Webb's motion for remand.

## II. ANALYSIS

"[A] case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987); see also Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 12 (1983). The Supreme Court has held that there is federal question jurisdiction "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal] laws or that Constitution." Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 152 (1908). A claim is considered based on federal law either when "(1) federal law creates the cause of action, or (2) the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." 16 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 107.14[4][a] at 107-88 (citing Franchise Tax Bd., 463 U.S. at 27-28).

The "complete preemption doctrine" is an exception to this more general rule by which a claim can be found to be removable to federal court. The Supreme Court has concluded that the preemptive force of some federal statutes is so strong that they "completely preempt" an area of state law. Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987). "In such instances, any claim purportedly based on that preempted state law is

considered, from its inception, a federal claim, and therefore arises under federal law." Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1107 (9th Cir. 2000).

Thus, even if the claim is pled in state court as based solely on state law (such as the state tort claims in this case), it may nonetheless be removable to federal court if the claim is in essence a federal claim due to the preemptive reach of federal law touching on the topic of the state law claim. As the Ninth Circuit succiently put it: "[A] statute may so completely preempt state law that it occupies the entire field, barring assertion of any state law claims and permitting removal to federal court." Abada v. Charles Schwab & Co., Inc., 300 F.3d 1112, 1118-1119 (9th Cir. 2002).

The principal issue in the motion is whether one or more of Webb's state law claims against Twin Palms and Cleary's estate are completely preempted by the FAA and regulations promulgated thereunder, such as Federal Aviation Regulations parts 61 (regulating operation of flight schools), 91.13 (setting forth applicable standard of care for pilots in command of aircraft), and 91.17 (prescribing the standards under which pilots may consume alcohol and operate aircraft). Indeed, Webb makes reference to one of these FAA regulations, part 91.17, in his complaint as proof that Cleary was negligent per se in the operation of the airplane. (Compl. ¶ 24 ("Cleary's operation of the subject airplane while intoxicated is in direct violation of . . . Federal Aviation Regulation 91.17, which pr[o]scribes such operation within eight (8) hours of the consumption of alcohol")). Twin Palms argues that, because Webb's claims make reference to and necessarily rely upon one or more of the standards set forth in the federal regulations to establish certain elements of his negligence claims (most notably, the applicable standard of care), the exclusive place for adjudicating those claims is in federal court. Their sole source of authority for this proposition is a recent Ninth Circuit case, Montalvo v. Spirit Airlines, 508 F.3d 464 (9th Cir. 2007), a case which Twin Palms argues "substantially changed the landscape for aviation law in the 9th Circuit." (Opp. at 4).

In Montalvo, passengers filed state law negligence claims against airlines in state court "for failing to warn about the danger of developing deep vein thrombosis and for

providing an unsafe seating configuration on domestic flights." Id. at 468. The matter was removed to federal court on the basis of diversity jurisdiction. Defendants then moved for summary judgment, claiming that the FAA preempted the failure to warn claim and, because there was no standards set regarding the same, plaintiffs could not make out a claim against them. The district court found the FAA preempted the state law failure to warn claim and granted judgment for defendants. As stated by the Ninth Circuit, the question presented for appeal in Montalvo was "whether and to what extent the Federal Aviation Act and its corresponding regulations promulgated by the Federal Aviation Administration regarding aviation safety, preempt state law standards of care . . . . [and] whether [claims for] allegedly unsafe seating configuration . . . are preempted by the Airline Deregulation Act[, which was designed] to prevent states from regulating airline prices, routes, and services." Id.

As to the failure to warn claim, the Ninth Circuit held "[t]he FAA and the relevant federal regulations preempt plaintiffs' failure to warn claim, <u>because the FAA preempts the entire field of aviation safety through implied field preemption. The FAA and regulations promulgated pursuant to it establish complete and thorough safety standards for air travel, which are not subject to supplementation by, or variation among, state laws.</u>" Id. (emphasis added). The court then held that, because the FAA and its accompanying regulations did not contain a mandate for airlines to warn about the risk of developing deep thrombosis, plaintiffs could not state a negligence claim against the airlines. Id. ("the Airlines are under no obligation to warn of the risk of developing DVT, absent a federal mandate to do so. Because there are no federal regulations requiring the Airlines to warn about the risks of DVT, we affirm the district court").

It is clear after Montalvo that the FAA and its regulations (like the ones at issue in this case) completely occupy the field to the exclusion of any state law on the topic of aviation safety, namely, what the standard of care is with respect to aircraft operation (such as the reference in the present complaint to violation of California Public Utilities Code § 21415, which proscribes being intoxicated while operating an aircraft). Thus, as

Twin Palms correctly notes, "[t]o the extent plaintiff claims the aircraft was negligently operated, plaintiff's right to relief is governed by . . . 14 C.F.R. § 91.17."

Whether Webb's remaining state law claims against Cleary and Twin Palms are similarly governed by federal, not state, law is irrelevant; only one of Webb's claims need be governed exclusively by federal law for complete preemption to serve as a basis for removal. Whether, and to what extent, his other allegations against Twin Palms (e.g., for negligently operating its flight school) fall within the ambit of "aviation safety" and thus are subject to the standards (or lack thereof) set forth in the FAA regulations is reserved for another time. It is sufficient for purposes of the present motion that Webb's claim that Cleary and Twin Palms were negligent because Cleary was intoxicated <u>while flying an airplane</u> falls within the area of aviation safety. If the question of whether airlines have a duty to warn passengers about deep vein thrombosis while in-flight is in the realm of aviation safety as it was in <u>Montalvo</u>, then certainly whether the pilot is negligent for flying the aircraft while intoxicated is as well.

That Twin Palms' liability in this regard is indirect, predicated as it is on respondeat superior, does not detract from the fact that ultimately proof of such vicarious liability against Twin Palms hinges, at least in part, on whether or not its employee was himself negligent, a question which as the Court has noted above is inextricably enmeshed with the question of aviation safety. Absent it being established that Cleary was negligent in flying the airplane on account of his intoxication, Webb cannot even begin to establish that Twin Palms should be held liable for negligence or neglience <u>per se</u> on a respondeat superior basis for the conduct of its employee. Webb's argument that such a reading takes this particular claim against Twin Palms far beyond the issue of "aviation safety" to one built "<u>entirely</u> on California employment and tort law" so as to "include any claim against a pilot and/or a flight school" is simply mistaken (Mot. Remand at 7; Reply at 1). Such a parade of horribles argument ignores the fact that one significant part of the present claim against Twin Palms rests entirely on whether there was a breach of aviation safety. It is in this sense that Webb's claim in this case does "arise under" federal law;

FAA regulations provide the only basis upon which liability can be imposed against defendants Twin Palms and Cleary's estate say, for instance, on the fact that Cleary was drunk at the time he was flying the airplane when it crashed.

Admittedly, the FAA does not completely displace state law, as it allows for it to be supplemented by state law remedies. See 49 U.S.C. § 40120(c) ("a remedy under this part is in addition to any other remedies provided by law"); Abdullah v. American Airlines, Inc., 181 F.3d 363, 375 (3rd Cir. 1999) ("Even though we have found federal preemption of the standards of aviation safety, we still conclude that the traditional state . . .law remedies continue to exist for violation of those standards") (cited with approval in Montalvo). That a plaintiff is still allowed to seek common law tort remedies, such as negligence, for violations of these federal standards does not detract from the fact that those claims still "arise under federal law." As courts have noted in both the FAA and other contexts, that a federal statute completely preempts a field does not necessarily mean that state law remedies are barred. See id. ("Federal preemption of the standards of care can coexist with state . . . tort remedies"); see also Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 256 (1984) (making the observation that its holding that there was complete federal preemption in the field nuclear safety standards by the Atomic Energy Act was not in conflict with the "tension" created with the fact that "state remedies" remained to vindicate those federal standards). Thus, for instance, "[a] federal statutory scheme may embody a congressional policy that federal law completely preempt state law in a particular area. However, unless the remedies provided by the federal statute are exclusive, state law may provide additional remedies that are compatible with the purpose of the federal statute. If the plaintiff files suit in state court seeking one of those addiitonal remedies, the defendant can still remove the case to federal court based on complete preemption." 16 MOORE'S FEDERAL PRACTICE § 107.14[4][b] at 107-96.

On one final note, Webb objects to the procedural propriety of the removal, claiming that not all the defendants to the case joined in the removal. As to defendant Cleary's estate, defendant's position is well-taken: The estate does not even exist yet so it could

not join in the removal. As to the insurance defendants, again, defendant Twin Palms correctly notes that it did not need those two defendants approval or joinder in removal because those defendants were only sued on the misrepresentations relating the insurance policy and those claims did not form the basis for removal. One noted treatise agrees, commenting: "If removal is based on the presence of a separate and independent claim . . . only those defendants who are defendants to the removable claim must join in the removal notice." 16 MOORE'S FEDERAL PRACTICE § 107.11[1][d] at 107-41. Given that the only basis for federal question jurisdiction ("arising under") comes from one or more of the state tort claims (notably, the ones for negligence and negligence per se) pled against Twin Palms and Cleary's estate (via FAA and its regulations), and not those separately lodged against and relating to separate wrongs done by the insurance defendants, their joinder was not required before filing the notice of removal.

For those reasons, the Court **DENIES** the motion to remand.

IT IS SO ORDERED.

Dated: December 19, 2008

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE