HONORABLE RONALD B. LEIGHTON

O

JS - 6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LEWIS WEBB, JR., an individual,

Plaintiff,

v.

ESTATE OF TIMOTHY CLEARY, et al,

Defendants.

Case No. EDCV 08-0565 RBL

ORDER GRANTING TWIN PALM AVIATION, INC.'S SUMMARY JUDGMENT

THIS MATTER comes before the Court upon motion for summary judgment filed by defendant, Twin Palms Aviation, Inc. ("TPA") [Dkt. #73]. The Court has reviewed the materials filed for and against the motion and heard argument of counsel. For the following reasons, the motion is **GRANTED.**

**BACKGROUND**

Plaintiffs Lewis Webb, Jr. and Michael L. Webb seek damages arising out of an air crash in which Michael Webb was seriously injured and Lewis Webb's plane was destroyed. Plaintiffs' separate complaints were consolidated by this Court. The accident occurred on October 28, 2007 at the Bermuda Dunes Airport. The plane was occupied by Michael Webb, a student pilot, in the left seat and Timothy

Cleary, a flight instructor, in the right. The parties dispute who was operating the aircraft when it experienced an aerodynamic stall during "touch and go" drills at the airport. The stall caused the crash. The accident aircraft was owned by Michael Webb's grandfather, Lewis Webb. Michael Webb was injured in the crash; Timothy Cleary was killed. Cleary's blood alcohol content was .31% immediately after the accident. Plaintiffs assert that Timothy Cleary's negligence caused the accident and that Cleary was acting as the apparent or ostensible agent of TPA at the time.

Tim Cleary worked as an independent contractor for TPA until September 24, 2007. On that date he was terminated via written letter handed him by TPA's chief pilot, Chuck Sweet. The reason for termination was the smell of alcohol on Cleary's person while on airport grounds. That same date, Jim Kuhn, TPA's owner/operator died unexpectedly. After delivering the termination letter to Cleary, Sweet returned to the flight school to shut it down due to Kuhn's death. The school remained closed until October 11, 2007 when it re-opened for flight instruction.

Three generations of Webbs took flight lessons from TPA starting in 2004 when Tim Cleary instructed Lewis Webb in a TPA-owned aircraft. Tim Cleary continued to instruct Lewis Webb, and then his son, Robert Webb, and then his grandson, Michael Webb. Cleary and the Webbs were friends outside the student-instructor relationship. Even prior to the first instructional flight on April 13, 2004, Lewis Webb had flown with Cleary in TPA aircraft about six times.

On the date of the accident, Lewis Webb knew that Jim Kuhn had died and that the flight school (TPA) had closed. He did not know the then-current status of the business. Unlike all prior instructional flights involving Cleary and the Webb family, the accident flight was not arranged through TPA and was not placed on TPA's master calendar. The flight instruction fee was not paid to TPA; rather, Lewis Webb wrote a $500 check to Timothy Cleary. He did so as a loan in response to Cleary's claims that TPA owed him money but it was difficult to obtain due to the probate of the Estate of Jim Kuhn. Regardless of the designation of the $500 check, all prior costs for Michael Webb's flight instructions

were paid by Lewis Webb directly to TPA by checks made payable to "Twin Palms Aviation."

At no time prior to the accident did TPA notify the Webbs that Timothy Cleary had been terminated or the reason for his termination.

## DISCUSSION

### I. **Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### II. **TPA's Liability for the Actions of Timothy Cleary is Determined According to Federal Law.**

It is undisputed that Timothy Cleary was intoxicated at the time he was instructing Michael Webb on take offs and landings on October 28, 2007. As a licensed flight instructor, he was the pilot in command. At a minimum, he was a proximate cause of the accident. The question posed by defendant's motion is whether Cleary's former employer is liable for the damage Cleary caused during a flight the former employer knew nothing about. Plaintiffs theorize that the state law principle of "ostensible agency" provides the basis for such liability. Defendant disagrees and argues, in part, that because of federal preemption, state law has no part to play in the resolution of the pertinent question.

ORDER
Page - 3

In responding to Mitchell Webb's Motion to Remand [Dkt. #23], this Court ruled that plaintiff's complaint is subject to federal law because "federal law occupies the entire field of aviation safety." [Dkt. #23]. The Court went on to say: "Even though we have found federal preemption of the standards of aviation safety, we still conclude that the traditional state . . . law remedies continue to exist for violation of those standards." *Id.*

The parties acknowledge that two Federal Aviation Regulations (FARs) imposed duties on Timothy Cleary at the time of the accident. FAR 91.13 provides that "no person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." 14 CFR § 91.13. FAR 91.17 forbids any person from acting as a crew member of any civil aircraft while under the influence of alcohol. 14 CFR § 91.17. All agree that Timothy Cleary violated these regulations and is liable for the consequences.

But what of the former employer? Plaintiffs seek to transfer liability to TPA by claiming that TPA had a state law duty, if not to warn, to at least inform them of Cleary's termination. Because they did not know Cleary had been fired (regardless of the reason) they thought he still worked for TPA and TPA was responsible for his conduct. TPA confines its response to federal law and cites FAR 1.1 and correctly claims it did not "operate" the accident aircraft. FAR 1.1 defines "operate" with respect to aircraft to include "use, cause to use or authorize to use aircraft, for the purpose . . . of air navigation." TPA denies that it used, caused to be used or authorized the use of Lewis Webb's aircraft for the fateful flight.[1] No plaintiff asserts that TPA met the definition of "operate" at the time of the accident. If federal law alone governs the question, defendant's motion must be granted.

### a. "Ostensible Agency" is not a Remedy Principle.

The initial argument advanced by the plaintiffs focused on the earlier pronouncement of Judge

---

[1] It is apparent that Lewis Webb did "operate" the accident aircraft.

ORDER
Page - 4

Larson in this case. They asserted that the concept of "ostensible agency" was a state law remedy and therefore not impacted by the limited reach of federal preemption of the field of aviation safety.

The principle of ostensible agency imposes liability on one (Principal) for the action of another (Agent) when the principal intentionally or by want of ordinary care causes a third person to believe another is his agent who is not really employed by him. Cal. Civ. Code §§ 2300 and 2317. If ostensible agency is one of those state law remedies that enforces but does not alter the federal rules of aviation safety, then it could be employed to impose Cleary's liability upon his former employer, TPA.

A remedy is anything a court can do for a litigant who has been wronged or is about to be wronged. The two most common remedies are judgments that plaintiffs are entitled to collect sums of money from defendants, and orders the defendants to refrain from their wrongful conduct or undo its consequences. The court decides whether the litigant has been wronged under the substantive law; it conducts its inquiry in accordance with the procedural law. The law of remedies falls somewhere between substance and procedure, distinct from both but overlapping with both. *Douglas Laycock, Modern American Remedies 1* (3d ed. 2002). Substantive law is that part of the law that determines the rights and obligations of individuals and corporate bodies. It derives from the common law, legislative statutes and agency regulations.

The principle of ostensible agency does not meet the traditional definition of "remedy" as that term was used by Judge Larson and in cited case law. It is not a category of damages, nor is it a species of injunctive relief available to a wronged party. It is a mechanism for transferring the liability of one person to another. It imposes a duty, obligation or liability and is therefore clearly a part of the substantive law.

The regulation of aviation safety by the federal government is so pervasive that it preempts the entire field from state and territorial regulation. *Abdullah v. American Airlines*, 181 F.3d 363, 367 (3rd Cir. 1999). Federal law alone establishes the applicable standards of care in the field of air safety. *Id*.

Simply put, "preemption" in the field of aviation safety means that the FARs define <u>what</u> must be done and what must not be done while operating an aircraft. The <u>what</u> is controlled by federal law. The <u>so what</u>, or the consequence of violation, is shared by federal and state law. The distinction is made clear from case law, *Id.*, and from the regulations themselves. The subject of preemption is specifically addressed in Section 120.121:

> (a) The issuance of 14 CFR parts 65, 91, 121, and 135 by the FAA preempts any state or local law, rule, regulation, order or standard covering the subject matter of 14 CFR parts 65, 91, 121 and 135, including but not limited to, drug testing of aviation personnel performing safety-sensitive functions.
>
> (b) The issuance of 14 CFR parts 65, 91, 121 and 135 does not preempt provisions of state criminal law that impose sanctions for reckless conduct of an individual that leads to actual loss of life, injury, or damage to property whether such provisions apply specifically to aviation employees or generally to the public.

14 CFR section 120.121.

The precise question in this case focuses upon the question of <u>who</u> must comply with the FARs. Though the law of remedies may overlap somewhat with substantive law, with regard to the question of ostensible agency, there can be no overlap. Concerning aviation safety, the <u>who</u> is inexorably linked to the <u>what</u> when prescribing or proscribing conduct. The pronouncement of a duty is meaningless without identifying who it is that bears the duty. Here, the duty is focused on those who use, arrange to use or cause to use aircraft. To allow state laws to regulate who must bear the responsibility for aviation safety would fundamentally alter the operation of general aviation from region to region. For example, imposing the duty of safe operation of an aircraft upon the owner of the ground or water on which the aircraft taxis, takes off or lands would substantially alter pre-flight routines in ways not contemplated by

ORDER
Page - 6

current safety rules.  Airport owners, marina operators and others would all have a stake in checking the emotional and physical health of the pilot, the currency of his license and other factors affecting flight safety.  This intrusion upon general aviation is little different than a local government seeking to limit the hours of take off and landings to control noise.  Such a regulation is plainly preempted by federal law. *See City of Burbank v. Lockheed Air Terminal*, 411 U.S. 624 (1973).

It is no different for a former employer.  The FARs provide that a person should report violations of air safety regulations to the FAA.  14 CFR § 13.1 - 13.5.  The FAA then conducts an investigation into the alleged violation, holds a hearing and fashions a remedy if the allegation is well-founded.  If the duty to report to the FAA is expanded to include the duty of a former employer to warn the universe of persons who might fly with the alleged violator, general aviation could be impacted with time-consuming checks by former employers, wide-spread circulation of serious and perhaps unfounded accusations against aviation personnel and a loss of the administrative procedural safeguards that preserve due process rights.  Here, the reason for termination was the smell of alcohol on Timothy Cleary's person while on airport grounds.  Standing alone, such conduct is not a violation of the FARs.  No evidence has been provided to this Court indicating that Cleary had, prior to the accident flight, flown while under the influence of alcohol or, if he had, that TPA knew about it.  At the time of his termination, there was therefore nothing to report to the FAA.

        **b.**      **<u>Flight Instruction Under Part 61 is an Essential Part of Air Safety Regulations.</u>**

In post-argument briefing, plaintiffs have changed the debate away from the substantive law versus remedy dichotomy and focused rather on the paucity of regulations controlling the so-called "Part 61 Flight School."  They cite *Martin v. Midwest Express Holdings, Inc.,* 555 F.3d 806, 808 (9th Cir. 2009) and argue that "when the agency issues pervasive regulations in an area, like passenger warnings, the FAA preempts all state law claims in <u>that</u> area.  In areas without pervasive regulations or other grounds for preemption, the state standard of care remains applicable." [Dkt. #129 at p. 2].  In *Martin* the Circuit

Court held that the absence of any FARs in Part 25 specifically applicable to airstairs did not serve to shield the manufacturer from state product liability under the umbrella of preemption. To draw from this Court's earlier analysis, the Circuit Court decided that the <u>what</u> question -- duties and obligations for safe airstairs -- had not been determined by federal law, preemption as to that subject had not occurred and state law could fill the void.

Plaintiffs' attempt to change the pertinent question is misplaced. The proper question is whether the federal regulation of flight instruction in a general aviation aircraft is pervasive. It is. As a component part of aviation safety, flight instruction is heavily regulated evincing an intent to occupy the entire field to the exclusion of state, territorial or local regulation. It is true that in contrast to the stringent licensure requirements governing the Part 141 Flight Schools, there is no mention of any regulations pertaining to the "Part 61 Flight School." As plaintiffs recognize, the regulation of flight instruction for general aviation aircraft is most often handled at the individual rather than corporate or institutional level. The requirements for experience, training, health, and operation of aircraft are directed at the flight instructor individually. The collection of several certified flight instructors within a corporate structure -- either as employees or independent contractors -- does not affect the obligations imposed by the aviation safety rules and regulations.

Aviation Safety is preempted by federal regulation. Flight instruction is a vital component of aviation safety regulations. Because the FAA preempts the field of air safety, a state may not expand the federal standards by imposing a common law, statutory or regulatory duty of care. *See Booth v. Santa Barbara Biplanes, LLC,* 158 Cal. App. 4th 1173 (2008). Expert opinion to the contrary does not change that established principle of law.

## **CONCLUSION**

Among the parties to this motion, only one did not use, cause to be used or arrange the use of the accident aircraft. TPA had no knowledge of the flight that day. Any attempt to extend liability from Timothy Cleary to TPA does not involve a "remedy" based on state law. It is fundamentally a matter of substantive law affecting obligations imposed upon aviation personnel. As such, the question is resolved by reference only to federal law which regulates aviation safety in a pervasive way. Because TPA did not "operate" the accident aircraft as defined in FAR 1.1, TPA is not responsible for Timothy Cleary's violation of FAR 91.13 and 91.17. 14 CRF 1.1, 91.13, 91.17. TPA's Motion for Summary Judgment [Dkt. #73] is **GRANTED**.

Dated this 20th day of January, 2011.

---

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE